# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: L.L.

No. 16-1227 (Jackson County 15-JA-142)

## MEMORANDUM DECISION

Petitioner Grandmother B.L., by counsel Seth Harper, appeals the Circuit Court of Jackson County's November 30, 2016, order terminating her custodial rights to L.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she did not successfully complete her post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2015, the DHHR filed an abuse and neglect petition against the child's mother based upon allegations of abandonment due to her ongoing criminal activity.[2] The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The petition contained additional allegations against other adult respondents. Namely, the petition alleged abuse and neglect as to D.L. and L.W. in regard to their three children, who also lived in the grandmother's home. Because petitioner raises no argument in regard to these additional children, they are not the subject of this appeal. However, because the conditions of abuse and neglect in the home were predicated, in part, upon these adult respondents' actions, it is important to address their relationships and living arrangements herein. According to the DHHR, petitioner's adult daughter, D.L., and her boyfriend, L.W., lived in petitioner's home with their three children. The petition further alleged that three other adults lived in the home: M.L. (mother of L.L.), C.L., and A.L. According to the DHHR, these additional adults abused

(continued . . . )

1

DHHR subsequently filed two amended petitions, one of which added petitioner, grandmother of L.L., as a respondent. According to this amended petition, L.L. resided with petitioner. The DHHR alleged that petitioner abused and/or neglected the child by virtue of exposure to chronic domestic violence. The DHHR also alleged that petitioner allowed her adult children to live in the home despite their drug use. The DHHR also included additional allegations as to the conditions in the home in an amended petition after further disclosures by L.L. Petitioner thereafter waived her right to a preliminary hearing.

In February of 2016, petitioner stipulated to the DHHR's allegations that she exposed the child to domestic violence. In April of 2016, the circuit court granted petitioner a post-adjudicatory improvement period.

In October of 2016, the circuit court held a series of hearings regarding petitioner's improvement period. According to the record, the psychologist who performed petitioner's psychological evaluation concluded that petitioner refused to accept responsibility for the actions that led to the petition's filing. According to the evaluator, petitioner's answers to test questions indicated that she was "faking," especially given the fact that petitioner indicated she saw no need to change her behavior. This assessment was supported by petitioner's comment that "she could write the book on parenting." Overall, the evaluator found petitioner had a history of volatile and unstable relationships with her children, including engaging in physical altercations and inappropriate expressions of anger. According to the evaluator, petitioner's behavior during supervised visitations suggested that she viewed her own priorities as being so important that others should defer to them. The evaluator also noted that petitioner showed little empathy to the child in regard to the environment she provided.

The report also discussed petitioner's own history of DHHR involvement, which resulted in her own children's removal for a period of three months in 1998 following domestic violence in the home. According to the evaluator, petitioner contacted the DHHR and expressed a desire to abandon her daughter. When the DHHR declined to pick the child up, petitioner threatened to kill the child. As to the potential return of L.L. to the home, the evaluator stated that such a placement was not in the child's best interests given petitioner's boundary issues with the child, which included discussing inappropriate topics and treating the child like a peer. According to the evaluator, such a relationship could impede the child's development. As evidenced by petitioner allowing drug use and domestic violence in the home, the evaluator indicated an extremely poor prognosis for her improved parenting.

In regard to her improvement period, DHHR employees testified to petitioner's failure to complete parenting and adult life skills services. Although it was noted that petitioner complied with services, the providers indicated that petitioner failed to make any meaningful changes. In fact, one provider testified that the conditions of abuse and neglect were ongoing, as she personally witnessed individuals who were under the influence of drugs in the home. A service

---

drugs and were previously convicted of offenses related to the manufacturing of methamphetamine. As of the filing of the DHHR's initial petition, L.L.'s father was deceased.

provider also testified to petitioner threatening to accuse the provider of sexual abuse so that it would be reported in the local newspaper and ruin the provider's reputation. This provider testified that she eventually ceased petitioner's services and that the DHHR had to go through several different workers before it found someone comfortable working with petitioner. Another provider expressed concern about returning the child to petitioner's care, especially given petitioner's continued associations with inappropriate individuals. Ultimately, the circuit court found there was conflicting evidence regarding petitioner's completion of certain services and treatment for her psychological diagnosis. The circuit court found that, although she participated in services, petitioner failed to make any lasting changes. Accordingly, the circuit court found that it did "not believe that the improvement period . . . successfully remedied the circumstances that led to the filing" of the petition. The circuit court further found that it was not in the child's best interests to be returned to petitioner. As such, the circuit court terminated petitioner's custodial rights to the child.[3] It is from this order that petitioner appeals.[4]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[3]The child's father is deceased. As of the filing of their briefs, both the DHHR and the guardian indicate that the child's mother was recently released from incarceration and granted a post-adjudicatory improvement period. Respondents further state that the permanency plan for the child is reunification with the mother. According to respondents, the child is currently placed at the Golden Girls Group Home in order to receive treatment related to behavioral issues she exhibited in her various foster placements. According to the family case plan, the concurrent permanency plan for the child is placement in a therapeutic foster home.

Because the parties herein indicate that the proceedings, as they relate to L.L., are ongoing, the Court reminds the circuit court and the parties of their roles in establishing permanency for children in abuse and neglect proceedings. *See* W.Va. R. P. for Child Abuse and Neglect Proc. 39(b) (establishing a duty to hold a permanent placement review hearings until permanent placement is achieved); W.Va. R. P. for Child Abuse and Neglect Proc. 43 (requiring circuit courts to achieve permanent placement of an abused and neglected child within twelve months of disposition). Additionally, the Court reminds the guardian that her "role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

[4]On appeal, petitioner does not raise a specific assignment of error regarding the circuit court's termination of custodial rights.

3

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in finding that she failed to successfully complete her post-adjudicatory improvement period. In support of this argument, petitioner relies almost entirely on the testimony of her most recent service provider. According to this provider, petitioner completed parenting services. This provider was also of the opinion that petitioner could provide the child with a safe, suitable home. As such, petitioner argues that it was disingenuous for the DHHR to argue against the opinion of its service provider. Specifically, petitioner argues that the circuit court should not have disregarded this provider's testimony in reaching its determination of whether petitioner successfully completed her improvement period. We note, however, that petitioner's reliance on testimony from this provider entirely ignores other conflicting evidence related to her lack of progress in the improvement period.

Specifically, the circuit court was presented with evidence from petitioner's psychological evaluation that indicated petitioner provided deceptive answers and that, as a result of her deception, some tests could not be properly interpreted. The psychological evaluation further determined that services for petitioner would not be beneficial because she failed to accept responsibility for her actions that necessitated the petition's filing. In fact, the evaluation noted that petitioner portrayed herself as a victim in the case, despite her control over the home in which the abuse occurred. These findings ultimately led the evaluator to conclude that petitioner's prognosis for improved parenting was extremely poor. Moreover, another of petitioner's service providers testified that she failed to make progress in parenting services over a span of four months. This same provider also testified to threats petitioner made against her and that petitioner "believes she is pretty near-perfect," which corroborated the psychological evaluator's opinion as to petitioner's failure to accept responsibility for her actions. Additionally, the provider testified to the continued presence of individuals in and around the home while under the influence.

Essentially, petitioner's argument on appeal is that the circuit court should have disregarded the evidence that supported a finding that she failed to successfully complete her improvement period and, instead, accepted the testimony from her most recent service provider. We do not agree. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). In this case, it is clear that the evidence was conflicting on the issue of whether petitioner successfully completed her improvement period. However, the circuit court, as the trier of fact, was uniquely situated to

make credibility determinations. Moreover, the circuit court was presented with ample evidence upon which to make its findings.

We have previously held as follows:

> "At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child[ren]." Syllabus Point 6, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 4, *In re Faith C.*, 226 W.Va. 188, 699 S.E.2d 730 (2010). Here, the circuit court did not abuse it discretion in finding that petitioner failed to successfully remedy the conditions of abuse and neglect in the home due to the fact that, although she participated in services, she failed to make any lasting changes. This finding was based on substantial evidence, including evidence from multiple individuals regarding petitioner's failure to accept responsibility for her actions. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Simply put, petitioner's failure to accept responsibility for her actions prevented her from making meaningful changes and remedying the conditions of abuse and neglect at issue.

Moreover, we have previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Here, even assuming that petitioner established full compliance with the terms and conditions of her improvement period, the fact remains that her failure to make meaningful change regarding the underlying issues of abuse and neglect prevented the child's return to her home. As the circuit court found, returning the child to petitioner's home while the conditions of abuse and neglect persisted was not in the child's best

interests. As such, we find no error in the circuit court's determination that petitioner's improvement period was unsuccessful.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 30, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 9, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[5]Petitioner further argues that the DHHR erroneously alleged that her failure to address her personality disorder diagnosis in therapy during her improvement period could serve as a basis for a finding that she did not successfully complete the same. According to petitioner, this condition of her improvement period was a suggestion, not a requirement. However, we find that, to the extent the circuit court relied on this evidence in reaching its determination, the same does not constitute error. Based on the evidence set forth above, the circuit court had ample evidence upon which to base its findings, even in the absence of petitioner's compliance with the recommendation in her psychological evaluation to submit to therapy for her diagnosis. As such, we decline to grant petitioner relief in this regard.